UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 19-30833-WRS
                                                         Chapter 13
JAMARUS BUTLER,

    Debtor.

**MEMORANDUM DECISION**

This Chapter 13 case came before the Court for an evidentiary hearing on September 19, 2019, to resolve the Objection to Confirmation of Chapter 13 Plan filed by Ford Motor Credit Company, LLC. (Doc. 18). For the reasons set forth below, the Court overrules the objection and confirms the Plan as amended. (Doc. 21).

**I. Facts**

On March 24, 2018, the Debtor, Jamarus T. Butler, purchased a new 2017 Ford Focus from Stivers Ford Lincoln, Inc., in Montgomery, Alabama for $22,192.93. (Claim No. 2). Butler testified that he purchased the Ford Focus for his girlfriend because she was only 18 at the time, and could not, under Alabama law, enter into a binding contract.[1] Butler is the only purchaser on the sales contract, and the certificate of title indicates that he is the sole owner of the vehicle.

---

[1] Alabama law defines a "minor" as:

> [a]n individual who, *because of age, lacks the capacity to contract under Alabama law*. Under current law, this means a single individual under 19 years of age and a married individual under 18 years of age, but excludes an individual whose disabilities of nonage have been removed by a court of competent jurisdiction for a reason other than establishing a legal residence in Alabama. If current law changes, this definition shall change accordingly

ALA. CODE § 16-64-1(1) (2013) (italics added).

Under the terms of the contract, Butler was to make 72 monthly payments to Ford Credit in the amount of $409.19.

Butler further testified that the $700 cash down payment as recited in the sales contract was actually made by his girlfriend. Butler's girlfriend test drove the automobile while the Stivers Ford sales representative, who was aware of the purchase arrangement, rode in the passenger seat, and Butler rode in the back seat. Butler and his girlfriend did not live together at the time Debtor purchased the vehicle, nor did they cohabitate after the sale. After the sale was completed, Butler's girlfriend drove the vehicle off the Stivers Ford lot, kept the vehicle at her residence, had the exclusive use of the vehicle, and made the payments directly to Ford Credit on the contract. Butler drove a different vehicle.

Several months after the purchase, the romance between Butler and his girlfriend cooled. When Butler learned that his now former girlfriend had stopped making the contract payments, he insisted that she return the vehicle to him, which she eventually agreed to do. Since that time, Butler has maintained possession of the automobile and is its primary user. Butler caught up the past due payments and has faithfully maintained payments under the contract.

Butler filed a petition in bankruptcy pursuant to Chapter 13 in this Court on March 29, 2019. (Doc. 1). He filed a Chapter 13 Plan with his petition and amended his Plan on June 12, 2019. (Doc. 21). In his amended Plan, Butler proposes to limit the value paid to Ford Credit on its secured claim pursuant to 11 U.S.C. § 1322(b)(2), to $13,125, which Butler contends is the value of the Ford Focus.[2] At the September 19 hearing, Ford Credit did not offer any evidence as

---

[2] Butler's initial Chapter 13 Plan proposed to value the Ford Focus at $11,500. Ford Credit objected to this valuation, claiming that the NADA Clean Retail value of the vehicle was $13,125. In response, Butler filed an Amended Chapter 13 Plan proposing to value the vehicle at $13,125.

to the value of the Ford Focus. Based on the evidence offered at the hearing, the Court finds that the value of the Ford Focus is $13,125, as sworn to by Butler. The only witness who testified at trial was the Debtor, Jamarus Butler. While Ford Credit questioned his credibility and veracity, they offered no evidence that his testimony was in any way false. The Court heard Butler's testimony and observed his demeanor, finding that he is credible.

## II. Law

### A. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). This is a final order.

### B. Because the Debtor purchased the Ford Focus for the exclusive and personal use of his girlfriend, the "hanging paragraph" does not apply.

The Court will divide its discussion here into three parts. In Part 1, the Court will discuss secured claims and lien modification in cases under Chapter 13. In Part 2, the Court will discuss the "hanging paragraph" of § 1325(a), which prevents debtors from modifying certain liens under a Chapter 13 Plan. In Part 3, the Court will consider whether the hanging paragraph prevents the Debtor from modifying the lien of Ford Motor Credit in this case.

3

### 1. Treatment of secured claims and lien modification in Chapter 13 cases.

Section 506(a) of the Bankruptcy Code provides, in part, that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

In this case, Ford Credit holds an indebtedness in the amount of $18,954.59, which is secured by a Ford Focus with a value of $13,125. By operation of § 506(a), Ford Credit holds a secured claim in the amount of $13,125, and an unsecured claim for the balance, which is $5,829.59. This process, of taking one undersecured indebtedness and converting into one secured and one unsecured claim is called "bifurcation."[3]

With exceptions to be discussed below, a Chapter 13 plan may "modify the rights of holders of secured claims." 11 U.S.C. § 1322(b)(2). It is well established that this "modification" means that the secured claim is paid in full with interest over the life of the plan, while the unsecured claim is treated as other unsecured claims, which can mean the holders of unsecured claims receive nothing.[4] *Graupner v. Nuvell Credit Corp. (In re Graupner)*, 537 F.3d 1295, 1296-98 (11th Cir. 2008).

---

[3] The term "bifurcation" is not mentioned in the Code. Like the terms "lien stripping" and "cramdown," which are also not mentioned in the Code, these terms feature prominently in reported case law. The term "lien stripping" is equivalent to "lien modification." The term "cramdown" is the process of forcing an unwilling creditor to accept the fair value of its collateral in full satisfaction of its secured claim–even if the indebtedness is more.

[4] As the Debtor's Amended Plan provides for a "pot" of $3,100, the holders of unsecured claims in this case will share that amount on a pro rata basis.

In this case, Butler is required under his contract to make payments in the amount of $409.19 for 72 months. If lien modification (or cramdown) is allowed, Ford Credit will receive adequate protection payments of $131.25 per month and then specified monthly payments of $308 for the remainder of the 56-month term of Debtor's Plan.[5]

## 2. The "hanging paragraph" acts as a limit to a Chapter 13 debtor's cramdown power under § 506.

Congress amended the Bankruptcy Code in 2005 to provide a new paragraph which was inserted below § 1325(a)(9) and above § 1325(b). Some refer to this unnumbered paragraph as § 1325(a)(*) while others call it the hanging paragraph. This Court will use the terminology "hanging paragraph." Whatever one chooses to call it, it provides that:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(9) (hanging paragraph).

The Eleventh Circuit has interpreted the effect of the hanging paragraph as follows:

> To fall within the hanging paragraph and be entitled to this anti-bifurcation protection, four general requirements must be satisfied: (1) the creditor must have a "purchase money security interest" in the collateral; (2) the debt must have been incurred within 910 days

---

[5] The reduction in the amount of payments to Ford Credit is attributable to two things. First, Butler pays only the value of the secured claim, and second, he pays interest under the *Till* interest rate, which in this case is 6.5%, down from 12.04% as provided under the sales contract.

5

> before the filing of the debtor's bankruptcy case; (3) the collateral for the debt must consist of a motor vehicle; and (4) the vehicle must have been acquired for the personal use of the debtor. If these requirements are satisfied, the allowed secured claim is fixed at the amount of the creditor's claim without resort to the "cramdown" provision mandated by section 506(a).

*In re Graupner*, 537 F.3d 1295, 1298 (11th Cir. 2008) (internal citations omitted).

In the case at bar, three of the four requirements to implicate the hanging paragraph are not in dispute. The Debtor does not dispute that Ford Credit has a purchase money security interest in the Ford Focus, that the debt was incurred within 910 days before the filing of the petition in bankruptcy, and that the Ford Focus in question is a motor vehicle within the meaning of the hanging paragraph. The only point in dispute is whether the motor vehicle in question was "acquired for the personal use of the debtor." The dispute here is a narrowly focused one.

### 3. Vehicles not acquired for the personal use of a debtor are not subject to the hanging paragraph.

Numerous Bankruptcy Court cases have been published on the meaning of the hanging paragraph since its introduction in 2005, which has led to multiple schools of thought as to the meaning of "personal use." Some Courts consider personal use to mean nonbusiness use. *See In re Grimme*, 371 B.R. 814, 816 (Bankr. S.D. Ohio 2007) ("'[P]ersonal use' means, simply non-business use.");[6] *In re Lowder*, No. 05-44802, 2006 WL 1794737 *4 (Bankr. D. Kan. June 28,

---

[6] *Grimme* appears to be on an island all by itself. In *Grimme*, the debtor, who had not held a valid driver's license for at least 15 years, purchased a vehicle for her son to drive. 371 B.R. at 816. The son used the vehicle daily for himself, and occasionally used the vehicle to take the debtor on errand runs or to doctor's appointments. *Id.* Despite the debtor having never driven the vehicle, the *Grimme* Court found that the debtor acquired the vehicle for "personal use" and set forth a "go/no-go" test without inquiring as to the intended user of the vehicle, stating that "[w]hen the evidence shows that a vehicle has been acquired for business purposes, the hanging paragraph will not apply. Conversely, if

6

2006) ("When a debtor can establish that a vehicle has been acquired for business purposes, the hanging paragraph in § 1325(a) will not apply."); *In re Hill*, 352 B.R. 69, 74 (Bankr. W.D. La. 2006) (Vehicle acquired to "generat[e] income for th[e] maintenance and support" of the household did not fall within the hanging paragraph.); *In re Joseph*, No. 06-50655, 2007 WL 950267 (Bankr. W.D. La. Mar. 20, 2007) (vehicle acquired to transport debtor to and from her place of employment was not acquired for "business use;" therefore, it fell within the hanging paragraph).

Other cases turn on the question of whether use by a family member is personal use if that use somehow benefits the debtor. *See In re Solis*, 356 B.R. 398, 411 (Bankr. S.D. Tex. 2006) ("[S]ignificant and material" intended use of a vehicle by the debtor constitutes "personal use" despite nonfiling spouse's primary use of the vehicle.); *In re Lorenz*, 368 B.R. 476, 486-87 (Bankr. E.D. Va. 2007) (Vehicle acquired because it was large enough to transport debtor's entire family to school, church, doctor's appointments, etc. was acquired for the "personal use" of the debtor despite debtor's primary use of the vehicle as his work truck.); *In re Bethoney*, 384 B.R. 24, 31-32 (Bankr. D. Mass. 2008) (Vehicle purchased for "family use" was "acquired for personal use of the debtor."); *but see In re Phillips*, 362 B.R. 284 (Bankr. E.D. Va. 2007) (The use of the vehicle by the debtor need not be exclusive, and that use by other family members, in addition to the debtor, did not bring the vehicle within the coverage of the hanging paragraph.).

This Court held in a prior case involving a debtor and nonfiling spouse that the hanging paragraph did not apply when the vehicle in question was acquired for the use of the nonfiling spouse because it was not acquired "for the personal use of the debtor." *In re Davis*, Case No. 06-

---

the evidence shows that a vehicle was acquired for nonbusiness purposes, the hanging paragraph will apply." *Id.* (citations omitted).

10461, 2006 WL 3613319, *2 (Bankr. M.D. Ala. Dec. 8, 2006) (Williams, J.). This Court's decision in *Davis* cited *In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006). The *Jackson* Court, in the course of defining "personal use," turned to a dictionary definition of the term "personal" as meaning "of or relating to a particular person, private." *Id.* at 926.

In the intervening years, a substantial number of courts facing this issue have followed the logic of the *Jackson* Court and held as this Court did in *Davis*. *See, e.g., In re Chaney*, Case No. 06-50775, 2007 WL 7025107 (Bankr. S.D. Ga. Feb. 7, 2007) (vehicle purchased for the use of a nondebtor spouse was not within the scope of the hanging paragraph and could therefore be crammed down); *In re Geddes*, Case No. 308-00713, 2008 WL 4490113 (Bankr. M.D. Tenn. June 17, 2008) (vehicle purchased for the use of the debtor's adult daughter did not fall within the hanging paragraph); *In re Strange*, 424 B.R. 584, 593 (Bankr. M.D. Ga. 2010) (vehicle acquired for the primary use of debtor's nonfiling husband did not fall within the purview of the hanging paragraph).

In *In re Pearson*, a husband and wife jointly purchased a 2003 GMC Yukon XL for the husband's use. Case No. 07-00478, 2008 WL 687058 (Bankr. E.D.N.C. Mar. 7, 2008). The only reason the wife was a purchaser and co-obligor on the note to Citi Financial was because the husband's credit was too poor for him to qualify for financing by himself. *Id.* The husband made all of the payments under the contract until the marriage broke down and the two separated. *Id.* Not wanting to severely damage her credit, the wife took possession of the GMC back from her estranged-husband and started making monthly payments. *Id*. Less than 910 days after the purchase of the GMC, the wife filed a Chapter 13 bankruptcy petition and proposed to limit the amount of Citi Financial's secured claim to the value of the GMC; Citi Financial objected on the grounds that her plan violated the hanging paragraph. *Id.* The court overruled Citi's objection

8

Case 19-30833    Doc 30    Filed 12/05/19    Entered 12/05/19 11:41:11    Desc Main
Document    Page 8 of 10

holding that the debtor "did not acquire the vehicle for her personal use, but rather, the vehicle was acquired for her husband's use," while also noting that the debtor's "use [of the GMC] as of the petition date is irrelevant to whether the hanging paragraph applies." *Id.* The relevant date is the date of acquisition.

### III. Analysis

The hanging paragraph applies only to vehicles acquired for the "personal use *of the debtor*." 11 U.S.C. § 1325(a)(9) (hanging paragraph) (italics added). The Debtor's girlfriend is not, and was not at the time the Ford Focus was purchased, a member of the Debtor's household. Her use and possession of the Ford Focus was exclusive while she and the Debtor maintained a romantic relationship; therefore, her exclusive use is not, and was not, beneficial to him except in the most indirect way, as any benefit to a loved one is indirectly beneficial to the Debtor. Therefore, it is clear that the Debtor did not acquire the Ford Focus so that he could enjoy "significant and material" use of the vehicle.

As the Ford Focus was purchased for the use of the Debtor's girlfriend, meaning use particular to her, it follows that the vehicle was not purchased for the personal use of the Debtor. Any argument that the girlfriend's exclusive use should be attributed to the Debtor, that is her use is tantamount to his use, is contrary to the plain language of the hanging paragraph.

### IV. Conclusion

The plain language of the hanging paragraph specifically limits its application to motor vehicles acquired for the personal use of the debtor. Because the vehicle here was acquired for the use of the Debtor's girlfriend, who was not a member of the Debtor's household, and not the

9

Debtor, the hanging paragraph does not apply, and he may modify or cramdown the secured claim of Ford Credit. Accordingly, Ford Credit's Objection to Confirmation is overruled. As this was the only remaining impediment to confirmation of Debtor's Plan, his Plan, as amended, will be confirmed. The Court will enter an Order by way of a separate document.

      Done this 5th day of December, 2019.

/s/ William R. Sawyer

William R. Sawyer
United States Bankruptcy Judge

c:     Debtor
       Joshua C. Milam, Attorney for Debtor
       Richard D. Shinbaum, Attorney for Debtor
       Leonard N. Math, Attorney for Ford Motor Credit Company, LLC
       Sabrina L. McKinney, Trustee
       Bankruptcy Administrator